No. 25-6112

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

RYAN WHITE,
    *Petitioner-Appellee*

v.

MICAH LAUREN STOVER
    *Respondent-Appellant.*

---

On Appeal from the United States District Court,
Middle District of New York,
Case No. 3:25-cv-00556; Judge William J. Campbell, Presiding

---

**REPLY BRIEF IN FURTHER SUPPORT OF RESPONDENT-APPELLANT'S EMERGENCY MOTION FOR STAY <u>PENDING APPEAL</u>**

---

Richard Min
Green Kaminer Min & Rockmore LLP
420 Lexington Avenue, Suite 2821
New York, NY 10170
Tel: (212) 681-6400
Fax: (212) 681-6999
rmin@gkmrlaw.com
*Attorneys for Respondent-Appellant*

## I. INTRODUCTION

For the reasons set forth in Appellant's Emergency Stay Motion (Doc. No. 3), this Court should grant a stay enforcement of the United States District Court for the Middle District of Tennessee (Campbell, William J.) Memorandum and Order, dated November 14, 2025 (the "Order") pending resolution of this appeal. Appellant is likely to succeed on the merits, and both she and the Children face irreparable harm if forced to return to Mexico before this appeal be determined. *See* Doc. No. 3 at 24-25.

Appellee's Response (Doc. No. 6) fails to meaningfully address Appellant's arguments in favor of a stay. As a threshold matter, his inaccurate account of the district court's legal analysis regarding ameliorative measures underscores why this Court should not compel these Children to return to Mexico before this appeal has been determined. There are virtually no ameliorative measures in place in Mexico that could adequately protect these Children or be effectively enforced. *See* Doc. No. 3 at 13-19. Accordingly, a stay pending appeal ought to be granted.

## II. PRELIMINARY STATEMENT

Two vulnerable children are at risk here, and balancing the four stay factors confirms that this Court should grant a stay. *See* Doc. No. 3 at 11. Stays are routinely granted in Hague Convention proceedings, particularly when children's safety is at

issue.[1] *See Simcox v. Simcox*, 511 F.3d 594 (6th Cir. 2007) (stay granted "citing the evidence of physical abuse").

### A. <u>Likelihood of Success on the Merits</u>

#### i. *Grave Risk of Harm*

The district court's treatment of grave risk and ameliorative measures is incompatible with the Supreme Court's directives in *Golan v. Saada* 596 U.S. 666, 680-82 (2022). In *Golan*, the Court made clear that once grave risk is established, a trial court is not obligated to search for or invent ameliorative measures unless they are raised by the parties or are "obviously suggested" by the record. It rejected the Second Circuit's prior rule requiring courts to engineer return "if at all possible," holding that the Convention does not pursue return at all costs, and that any ameliorative-measure inquiry must remain discretionary, child-safety focused, and confined within treaty limits.

---

[1] *See also Tereshchenko v. Karimi*, 102 F.4th 111 (2d Cir. 2024) (stay issued); *Saada v. Golan*, No. 22-1965 (2d Cir.), Order (Sept. 14, 2022), Dkt. No. 164 (same);*Silva v. Dos Santos*, 68 F.4th 1247, 1253 (11th Cir. 2023) (emergency stay after the district court denied the mother's stay motion); *Walsh v. Walsh*, 221 F.3d 204 (1st Cir. 2000) (affirming stay pending appeal); *Karpenko v. Leendertz*, No. CIV.A. 09-03207, 2010 WL 996465 (E.D. Pa. Mar. 15, 2010) (granting emergency motion for a stay pending appeal); *Neumann v. Neumann,* 684 F. App'x 471 (6th Cir. 2017) (granting stay motion pending appeal); *Kijowska v. Haines*, 463 F.3d 583 (7th Cir. 2006) (granting stay to prevent harm from multiple child relocations); *Baz v. Patterson*, 100 F.4th 854 (7th Cir. 2024), cert. denied, 145 S. Ct. 1049, 220 L. Ed. 2d 381 (2025) (granting stay pending appeal); *Charalambous v. Charalambous*, 627 F.3d 462 (1st Cir. 2010) (granting stay pending appeal after denial by the district court).

The approach by the district court here ignores this framework. Appellee never proposed, accepted, or identified any ameliorative measures[2] yet the district court raised conditions on its own initiative and relied on speculative Mexican processes to justify return. That is precisely the judicial overreach *Golan* prohibits: courts may not invent undertakings or presume foreign-court action simply to facilitate repatriation. Nor may they collapse the grave-risk analysis into an assumption that foreign systems will cure the danger; *Golan* demands that grave risk be assessed first, independently, without treating return as a problem the court is required to solve.

In short, the district court resurrected the discarded Second Circuit logic by searching for ways to enable return even when the Appellee made no effort to propose them and thereby inverted *Golan's* rule. Rather than exercising discretion to deny return where no workable measures were offered, the district court manufactured solutions and used them to discount grave risk. That is a misapplication of controlling Supreme Court law and provides a clear appellate ground for reversal.

As stated in Appellant's Stay Motion (Doc. No. 3 at 13–19), the Children cannot be protected by the unenforceable ameliorative measures contemplated by

---

[2] Appellee further never testified or agreed to comply with any ameliorative measures in Mexico. His less than forthcoming testimony and admitted behavior in Mexico suggests he may not comply with any ameliorative measures.

the district court. Appellant's theoretical access to courts or public services in Mexico does little to mitigate the grave risk of psychological harm that the Children will face if returned. *See Danaipour v. McLarey*, 386 F.3d 289, 289 (1st Cir. 2004) ("That Peru has services designed to address domestic violence does not, by itself, establish that the children would receive sufficient protection if returned"); *Feder v. Evans-Feder*, 63 F.3d 217, 226 (3d Cir. 1995) ("If handing over custody of a child to an abusive parent creates a grave risk of harm to the child…the child should not be handed over, however severely the law of the parent's country might punish such behavior").

The issue is not whether Mexican courts *could* issue protective orders, but rather that no U.S. court can enforce the vague measures proposed. Here, if the Children are compelled to return to Mexico, they will face the same environment and circumstances that caused their trauma-related conditions, including but not limited to PTSD symptoms for E.G.W., with no reliable assurance that Appellee will comply with any protective orders issued in Mexico. *Walsh v. Walsh*, 221 F.3d 204, 221 (1st Cir. 2000). Contrary to Appellee's assertion (Doc. No. 6 at 12), without enforceability, there is no assurance that the Children's psychological harm can be prevented.

As the Sixth Circuit held in *Simcox v. Simcox*, 511 F.3d 594 (2007), undertakings must be genuinely effective in protecting the Children, not merely

theoretical. Thus, the fact that "Appellant herself has already obtained an *ex parte* protective order in Mexico, both parties have counsel in Mexico, Appellant's Counsel in Mexico testified that it is possible to obtain a protective order in absentia in Mexico, and other protective measures … are fully available in Mexico" (Doc. No. 6 at 12) does not alter the reality that the Children would be re-traumatized if returned to Mexico and forced to encounter Appellee. *See* Doc. No. 3 at 43. Appellant again emphasizes that the *ex parte* protective order applies solely to the Appellant and does not extend to the Children. Although the parties may have legal representation in Mexico, this fact does not address the central issue: the Children face severe psychological harm if returned to Mexico. *Id*. Neither counsel nor a protective order can shield the Children from this harm. Accordingly, a grave risk of psychological harm exists, and the petition should have been denied on this basis alone.

Further, Appellee contends that "the district court exercised its discretion to order the return of the children and to consider ameliorative measures that Respondent and other witnesses testified about at trial and were clearly suggested by the circumstances of the case." *See* Doc. No. 6 at 13. Yet, in the case at bar, Appellee failed to propose any ameliorative measures at the trial court level to protect the Children from further trauma or the exacerbation of PTSD or anxiety symptoms in Mexico.

In fact, ameliorative measures in Mexico were not explicitly discussed at all during the four (4) day evidentiary hearing. The Sixth Circuit has made clear that "the determination of whether any valid undertakings are possible in a particular case is inherently fact-bound, and the petitioner proffering the undertaking bears the burden of proof." *Simcox*, 511 F.3d at 594. This court further emphasized that "the burden for establishing the appropriateness and efficacy of any proposed undertakings rests with the petitioner." *Id.* at 611. The district court here on its own accord discussed theoretical ameliorative measures to which Appellee never proposed or agreed.

Moreover, Appellee contends that Appellant "attempts to improperly inject" new evidence post-trial (Doc. No. 6 at 9) and characterizes this as a technique to circumvent the trial record. E.G.W. only disclosed *after* trial to his school that Appellee had previously choked him. The safety concern for the Children posed by return cannot be minimized and this new disclosure should be considered.

This Court has permitted consideration of new evidence post-trial that could not have been discovered earlier through reasonable diligence, especially when it implicates the welfare of children. *See Neumann v. Neumann*, 684 F. App'x 471 (6th Cir. 2017) (case remanded after changed circumstances warranted reconsideration of whether returning children would pose a grave risk of psychological harm). This Court should, therefore, not disregard this crucial evidence as is material to the

Children's psychological well-being if forced to return to Mexico on December 14, 2025.

Appellee focuses on the fact that the Children's accounts of physical abuse are conveyed solely through the Appellant. *See* Doc. No. 6 at 10. The Children were not permitted to directly relay their account of abuse to the trial court even though Appellant filed a Motion for In Camera Interview (ECF No. 29). *See Neumann,* 684 F. App'x at 482 (stating that the district court interviewing the subject children enabled "the district court to determine the true extent of the risk to them."). Appellee opposed this motion (ECF No. 32), and the district court declined to conduct the interviews. Consequently, Dr. Bender and Appellant remain the most appropriate individuals to testify about the Children's traumas, as they are relaying what the Children themselves have expressed to them in confidence.

    ii. *Mature Child Exception*

Appellee contends that the record "shows suggestibility, influence by awareness of litigation, and reluctance to separate" (Doc. No. 6 at 14) and that, therefore, the "district court committed no legal error in rejecting the mature age objection." (*Id* at 15). This contention is misplaced. The district court refused to interview the Children despite Dr. Bender's expert opinion of the Children's maturity and objections. Any allegations of influence by Appellee's expert were not based on any direct observations of the Children. The district court further did not provide its

reasons for disregarding Dr. Bender's uncontroverted expert opinion that the Children were of a sufficient age and maturity for their objections to returning to be considered. *See Bassat v. Dana*, No. 25-10915, 2025 WL 2304896, at *8 (11th Cir. 2025) (reversing when lower court failed to acknowledge children's testimony that their father was abusive nor found that the testimony lacked credibility).

      iii.  *Consent Defense*

Appellee contends that the district court properly found that no consent defense applied, emphasizing the difference between "temporary permission to travel and acquiescence to permanent relocation" (Doc. No. 6 at 16). That framing misstates the issue. The question on appeal is not whether Appellee consented to a permanent relocation, but whether he expressly agreed that Appellant would have sole authority to determine where the Children would reside through at least June 2025. Appellee's change of heart after the Children arrived in the United States does not nullify his prior consent retroactively. *See Toren v. Toren*, 191 F.3d 23 (1st Cir. 1999) (anticipatory retention insufficient). Because Appellee filed this action in May 2025, when Appellant had the right to choose where the Children should reside (temporarily or permanently) at that time, the consent exception is applicable and there is no wrongful retention of the Children. Therefore, the district court erred in concluding that no consent defense applied.

### B. Irreparable Injury Absent a Stay

Here too, Appellee fails to meaningfully address the severe harm to two minor children of being uprooted from their daily routines and safe surroundings in Nashville, Tennessee, and forced to return to a parent that has caused them deep trauma. *See* Doc. No. 3 at 102-105. Surprisingly, Appellee argues that a stay of the district court's order would harm the Children (Doc. No. 6 at 19) despite substantial evidence to the contrary. Dr. Bender's expert testimony established that interrupting the Children's ongoing therapeutic treatment would result in significant psychological harm, far beyond mere inconvenience or parental preference. *See* Doc. No. 3 at 72. Specifically, Dr. Bender opined that a double relocation, should Appellant prevail on appeal, would "compound instability, reinforce feelings of helplessness, and risk re-traumatization." *Id*. In short, Appellee's framing of this case and his efforts to minimize his abuse and its substantial effects on these Children only underscore the need for a stay of the return order until this Court rules on the merits of Appellant's appeal.

Lastly, contrary to the district court's finding and Appellee's contention, the existence of certain ameliorative measures here (Doc. No. 3 at 45) – that are not enforceable – does not eliminate the risk of irreparable harm to the Children. That is precisely the issue on appeal in this Court. Once in Mexico, the Children will be outside the effective control of the U.S. courts, and it may be too late to protect them

from the grave risk posed by Appellee, regardless of how this Court decides the current pending appeal.

### C. <u>Injury to Other Party</u>

Appellee contends that "[e]ntering a stay for the pendency of this appeal and allowing Appellant to continue to unilaterally control whether and to what extent Appellee can communicate with the Children threatens to turn any stay into a *de facto* custody award to Appellant." *See* Doc. No. 6 at 19. This is categorically false. First, the only reason Appellant curtailed communication between the Children and Appellee is because the Children firmly refuse to speak with Appellee, and each mention of Appellee's name triggers a trauma-related response in the Children. This reaction is further corroborated by Appellant's forensic expert, Dr. Bender, who observed: "since the trial, both boys have exhibited increased stress reactions … coinciding with renewed fear of potential return. This pattern is typical of trauma-related anticipatory anxiety when children perceive that their safety may again be threatened." *See* Doc. No. 3 at 72.

Second, it is indisputable that granting a stay in this matter does not confer custody rights on one parent over the other, nor does it establish or endorse any access schedule. Rather, it simply preserves the status quo for a limited period.

### D. The Public Interest

Finally, the public interest weighs in favor of a stay. At its heart, the Hague Convention is designed to protect "the well-being of a child." *Chafin*, 568 U.S. at 179. Although the Hague Convention "is designed, in part, to ensure the prompt return" of wrongfully removed or retained children, *Ermini v. Vittori*, 758 F. 3d 153, 156 (2d Cir. 2014), the "safety of children is paramount," *Van De Sande v. Van De Sande*, 4331 F. 3d 567, 572 (7th Cir. 2005). Prioritizing return at the expense of the safety of two young children constitutes a failure to uphold the Convention's core principle of protecting minors from harm.

Both Appellant and the Children are American citizens seeking relief and a final determination from this Court on critical matters of safety. There is, therefore, a compelling public interest in staying return pending this Court's final review of the appeal, as well as in safeguarding the Children from potential re-traumatization and future harm. The underlying purpose of the Hague Convention, together with the unique circumstances presented here, strongly supports the issuance of a stay.

### III. CONCLUSION

Accordingly, we respectfully request that this Court stay enforcement of the United States District Court for the Middle District of Tennessee (Campbell, William J.) Memorandum and Order, dated November 14, 2025, until this Court has ruled on the appeal.

Dated: December 10, 2025

                                      Respectfully submitted,

                                      /s/ Richard Min
                                      Richard Min
                                      Green Kaminer Min & Rockmore LLP
                                      *Attorneys for Respondent-Appellant*
                                      420 Lexington Avenue, Suite 2821
                                      New York, NY 10170
                                      Tel: (212) 681-6400
                                      Fax: (212) 681-6999
                                      rmin@gkmrlaw.com

## CERTIFICATE OF COMPLIANCE

1. This document complies with the Word limit of Fed. R. App. P. 27 because, excluding the parts of the document exempted by Fed R. App. P. 32(f), this document contains 2594 words.

2. This document complies with the typeface requirements of Fed R. App. P. 32(a)(5) and the type-style requirements of Fed R. App. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in size 14 Times New Roman font for the body and footnotes.

Dated: December 10, 2025

/s/ Richard Min
Richard Min

## CERTIFICATE OF SERVICE

I, Richard Min, counsel for Respondent-Appellant and a member of the Bar of this court, hereby certify that, on December 10, 2025, a copy of the foregoing Reply was filed electronically through the appellate CM/ECF system with the Clerk of the Court. I further certify that all parties required to be served have been served.

Dated: December 10, 2025

/s/ Richard Min
Richard Min